1   MELINDA HAAG (CABN 132612)
    United States Attorney
2
    DAVID R. CALLAWAY (CABN 121782)
3   Chief, Criminal Division

4   JOHN H. HEMANN (CABN 165823)
    Assistant United States Attorney
5
        450 Golden Gate Avenue, Box 36055
6       San Francisco, California 94102-3495
        Telephone: (415) 436-6774
7       FAX: (415) 436-7234
        john.hemann@usdoj.gov
8
    Attorneys for United States of America
9

10                          UNITED STATES DISTRICT COURT

11                        NORTHERN DISTRICT OF CALIFORNIA

12                              SAN FRANCISCO DIVISION

13
    UNITED STATES OF AMERICA,            )   CASE NO. CR 14-0102 CRB
14                                       )
           Plaintiff,                    )
15                                       )   GOVERNMENT'S OPPOSITION TO
        v.                               )   DEFENDANT FURMINGER'S MOTIONS FOR A
16                                       )   JUDGMENT OF ACQUITTAL AND A NEW
    IAN FURMINGER AND EDMOND ROBLES,     )   TRIAL
17                                       )
           Defendants.                   )
18  ─────────────────────────────────────)

19      Defendant Ian Furminger moves for a judgment of acquittal under Fed. R. Crim. P. 29 and a new

20  trial under Fed. R. Crim. P. 33.  Furminger's motions rest exclusively on the premise that the jury should

21  not have believed Reynaldo Vargas, his former subordinate and a witness at trial.  He argues that the

22  Court simply should accept his interpretation of the evidence and reject the jury's.  Furminger makes no

23  effort to apply the standards required under Rules 29 and 33.

24      Furminger's arguments are meritless and his motions should be denied.

25

26

27

28
    GOVERNMENT'S OPPOSITION TO DEFENDANTS'
    MOTION FOR A JUDGMENT OF ACQUITTAL AND A NEW TRIAL
    CR 14-0102 CRB

## I. LEGAL STANDARD

A motion for judgment of acquittal under Rule 29 tests "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt, viewing the evidence in the light favorable to the Government." *United States v. Figueroa-Paz*, 468 F.2d 1055, 1058 (9th Cir.1972). In ruling on a Rule 29 motion, a district court must bear in mind that "it is the exclusive function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts." *United States v. Rojas*, 554 F.2d 938, 943 (9th Cir.1977). Only when the government's evidence presented at trial fails to establish any reason to believe that an innocent explanation of the evidence was any less likely than the incriminating explanation advanced by the government, is acquittal warranted. *United States v. Vasquez-Chan*, 978 F.2d 546, 551 (9th Cir.1992).

Under Rule 33, the Court may, upon the defendant's motion, vacate a judgment and grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). In general, "[a] district court's power to grant a motion for a new trial is much broader than its power to grant a motion for judgment of acquittal." *United States v. Kellington*, 217 F.3d 1084, 1097 (9th Cir. 2000). For example, when evaluating a motion for a new trial, "[t]he court is not obliged to view the evidence in the light most favorable to the verdict, and it is free to weigh the evidence and evaluate for itself the credibility of the witnesses." *Id*. "By the plain terms of Rule 33, however, this Court's focus must be whether failing to grant a new trial would result in manifest injustice." *United States v. Jinian*, 2011 WL 5056978, at *7 (N.D. Cal. 2011), aff'd 712 F.3d 1255 (9th Cir. 2013).

When a defendant moves for a new trial based on the weight of the evidence, the Court may grant a new trial only if it "concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred." *Kellington*, 217 F.3d at 1097. The Ninth Circuit has repeatedly cautioned that this standard will be met only in "exceptional" cases or circumstances. *See United States v. Del Toro-Barboza*, 673 F.3d 1136, 1153 (9th Cir. 2012); *United States v. Rush*, 749 F.2d 1369, 1371 (9th Cir. 1984); *United States v. Pimentel*, 654 F.2d 538, 545 (9th Cir. 1981). "[T]he Ninth Circuit has held

that such motions are generally disfavored." *United States v. Wong*, 2014 WL 923347, *8 (N.D. Cal. March 5, 2014) (Judge Edward M. Chen).

## II. ARGUMENT

It is useful, first, to identify two things Furminger does not do in making his arguments. First, he does not argue that severance was required, though he feints at this argument in his opening paragraphs. He, perhaps, does not make this argument explicitly because Vargas, Cesar Hernandez, Andrew Byrd, Crystal Ponzer testified about incidents in which both Furminger and Robles were present during illegal conduct and Vargas and Hernandez testified about communication that occurred between the co-conspirators about the illegal conduct.

Second, Furminger does not distinguish in his brief between the standards and purposes of Rule 29 and Rule 33; he lumps his sufficiency arguments together under both rules. Under Rule 29, the question is whether a reasonable jury could find the defendant guilty, a standard defendant simply does not address. Under Rule 33, the question is whether doubts about the sufficiency of the evidence are so pronounced that the Court must act to prevent a miscarriage of justice, a standard defendant addresses simply by repeating the themes and arguments of his closing that the jury did not accept. It would do Furminger no good to dive deeply into either of the applicable standards, because he misses them both by so wide a mark.

The basic problem with Furminger's argument – whether considered under Rule 29 or rule 33 – is that Vargas's testimony was credible under the metrics used to measure credibility; key portions of his testimony were corroborated; and the jury believed him. Indeed, the jury's reasonable reliance on Vargas's credibility was so pronounced that they acquitted Furminger and Robles on the drug and extortion charges about which Vargas did not testify.

Furminger's argument follows this basic syllogism: (1) The evidence supporting the intent and knowledge elements of the charges against Furminger came primarily from Vargas; (2) Vargas's testimony was corroborated only as to Robles and not as to Furminger; (3) therefore, Vargas cannot be believed as to Furminger and the evidence, accordingly, is not sufficient. This syllogism is false for the following reasons.

The major premise is essentially accurate. Vargas's testimony provided the most direct evidence as to the key question of "whether Mr. Furminger had any knowledge or involvement in the theft." Def. Mem. at 8:18. Vargas answered this question and provided detailed information that was properly accepted by the jury. Vargas explained that he, Robles, and Furminger engaged in a course of conduct in which they took money and property during police operations, kept it for themselves, and did not report their taking of the money and property on police incident reports. Furminger does not dispute that, if believed, Vargas testimony was sufficient to sustain the convictions, which is why he focuses on Vargas credibility and where his analysis deteriorates.

The minor premise of Furminger's syllogism is flawed, factually. It is true that some of the clearest corroborating evidence related to Robles directly. For example, property purchased with the stolen Apple gift card was given by Robles to his girlfriend and Robles spent almost exactly $10,000 in cash immediately after the theft of money from the residence in Newark. However, there was significant corroborating evidence as to Furminger as well:

- Cesar Hernandez testified that he spoke with Vargas and Robles at the Mission police station, with Furminger present on six to eight occasions, about receiving money stolen from houses. RT 618:13 – 619:10.

- Hernandez testified that he, Robles, and Furminger discussed robbing a drug dealer friend of Hernandez's who ran a body shop. Hernandez testified that Furminger was an active participant in the discussion and promised that the friend would not get arrested, only robbed. RT 698:6 – 700:18.

- Vargas testified that Furminger told him that he spent some of the Newark money taken in May 2009 on installing skylights in his house. RT 1376:12-17. Two witnesses testified that Furminger did indeed install skylights in his house around the time after the Newark thefts. RT 1211:7 – 1213:7; RT 1726:2 -1727:17. That is was not "unusual" for Furminger to pay his handyman cash does not undercut the fact that the evidence corroborated that Furminger actually used the cash in the way he told Vargas, contemporaneously, he was going to use it.

- The dates of the incidents in question line up to SFPD time records. See Exhibit 314 (Furminger time and attendance records). Vargas testified about specific incidents that took place on

specific days, some of which Furminger was present at and some of which he was not. Compare Exs. 74, 247, 252, 254, with Ex. 314. SFPD time and attendance records show that Furminger was present and working with Vargas and Robles on the days Vargas said he was there, and was not present on the days Vargas was not. The records show that Furminger came and went at the times Vargas said he did. There is no evidence that Vargas ever saw or reviewed Furminger's time records before he testified.

- Call and text records introduced at trial corroborated Vargas's recollection of communications between the three officers on November 19, 2009, the day they stole money from Crystal Ponzer and her boyfriend at the self-storage unit in the Sunset. Exs. 254 and 282; RT 1682:2 – 1685:13. There is no evidence that Vargas ever saw or reviewed these records before he testified.

Furminger's argues, ignoring the Hernandez testimony, that viewed in isolation this evidence was not "unusual" in any way. But this argument misses the point. The point is that the data contained in these unimpeachable business records was consistent with – and therefore corroborative of – Vargas's testimony. Furminger also simply ignores Cesar Hernandez's testimony that Furminger was present during conversations between the officers about the thefts.

The conclusion of Furminger's syllogism also is flawed, both as a matter of logic and law. Furminger contends that without strong corroboration of the testimony given by Vargas about Furminger, Vargas's testimony regarding Furminger was not credible. Stated another way, Furminger argues that if only the testimony regarding Robles was corroborated, Vargas cannot be believed regarding Furminger.

First, Furminger's contention is wrong as a matter of law. Credibility is not simply a rote exercise in corroboration. The law, as the Court instructed the jury, says that credibility is determined by reference to a number of factors:

> In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.
>
> In considering the testimony of any witness, you may take into account: the witness's opportunity and ability to see or hear or know the things testified to; the witness's memory; the witness's manner while testifying; the witness's interest in the outcome of the case, if any; the witness's bias or prejudice, if any; whether other evidence contradicted the witness's testimony; the reasonableness of the witness's testimony in light of all the evidence; and any other factors that bear on believability.

> The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

RT 1838:18 – 1839:19.

Only one these factors – "the reasonableness of the witness's testimony in light of all the evidence" – concerns corroboration and Furminger addresses none of the others. There is no legal authority for the argument Furminger advances, which is that a witness is credible only as to those facts which are corroborated. Vargas, incidentally, was a tremendously credible witness in all respects. He had the opportunity to see and hear what he testified to; his memory was good; he understood that he had no interest in the outcome of the case; he admitted that he was seeking leniency in exchange for cooperation; no evidence contradicted his testimony; and there was substantial corroboration at many points.

Finally, the conclusion of Furminger's syllogism is not logically sound. If Vargas's testimony was corroborated in significant part, which Furminger concedes it was as to Robles with the cash deposits and bicycle purchase, it is fair and appropriate to conclude that he was telling the truth in general. Logic does not dictate that a witness is believable only if every single thing he says is supported by an independent corresponding piece of evidence. But that is what Furminger is arguing: The jury could believe Vargas as to Robles, but not as to Furminger. This argument is without specious.

One other point bears brief mention. Furminger argues that the evidence supporting the wire fraud convictions was insufficient because, as discussed above, Vargas's description of Furminger's involvement was not sufficiently corroborated. Def. Mem. at 8-9. In making this argument about the wire fraud counts, Furminger too narrowly considers the "scheme." He suggests that the entirety of evidence the jury was to consider regarding the "scheme to defraud" related to the November 19, 2009, thefts from Crystal Ponzer and her boyfriend. That is not accurate. The "scheme" related to the entire course of conduct described by Vargas and Cesar Hernandez beginning in February 2009, as alleged in the indictment. The events of November 19, 2009, were part of the scheme, but not all of the scheme. The two charged wire communications took place on November 19, 2009, but those were merely wires in furtherance of a scheme that, as described by Vargas and Hernandez, originated months earlier.

In his motion, Furminger does no more than "forcefully recount[] the evidence that was adduced at trial in support of the Defendant and the inferences defense counsel attempted to draw from the evidence . . . ." *Wong*, 2014 WL 923347 at *8. Beyond establishing his own disagreement with the facts found and inferences drawn by the jury, he does not demonstrate that the evidence preponderates heavily against the verdict or that serious miscarriage of justice occurred. *Cf. id.* at *8-9. Accordingly, his motions should be denied.

                Respectfully submitted,

                MELINDA HAAG
                United States Attorney

                *John H Hemann*

Dated: February 13, 2015

                _____
                JOHN H. HEMANN
                Assistant United States Attorney